UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSEPH M. GALLO,

                                Plaintiff,

                    -v.-

INTER-CON SECURITY SYSTEMS INC.,

                                Defendant.

20 Civ. 4879 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:[1]

          Plaintiff Joseph M. Gallo filed this action against his former employer,

Defendant Inter-Con Security Systems, Inc., alleging discrimination on the

basis of his age and breach of a February 9, 2018 Settlement Agreement

between the parties ("the "Settlement Agreement" or the "Agreement").  Working

in reverse order, Plaintiff claims that Defendant has not adhered to certain of

its obligations under the Settlement Agreement, including failing to reimburse

him for medical expenses and to reinstate his employment with full seniority.

Of potentially greater concern to the Court, however, is that Plaintiff also

restates the claims of age discrimination that were ostensibly resolved by the

Settlement Agreement (the "Initial Action").  Before the Court is Defendant's

motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).  Defendant has further requested that the Court order

Plaintiff to pay all or part of the costs of the Initial Action pursuant to Federal

Rule of Civil Procedure 41(d).  For the reasons set forth below, the Court grants

---

[1]          The Clerk of Court is directed to modify the caption in the docket of this case to
conform with that contained in this Opinion.

Defendant's motion to dismiss, though it also grants Plaintiff leave to amend certain of his pleadings, and denies Defendant's motion for fees.

## BACKGROUND[2]

### A.   The Initial Action and the Settlement Agreement

Plaintiff Joseph M. Gallo is a special security officer ("SSO") at the United States District Court for the Southern District of New York.  (Pl. Opp. 3; Initial

---

[2]     The facts in this Opinion are primarily drawn from Plaintiff's Amended Complaint ("FAC" (Dkt. #16)), which is the operative pleading in this action.  Because Plaintiff is proceeding *pro se*, the Court draws additional facts from his opposition to Defendant's motion (Dkt. #27), and from certain statements made at the September 17, 2020 conference in this matter ("Sept. 17, 2020 Tr." (Dkt. #14)), to the extent they are consistent with the Amended Complaint.  *See Braxton* v. *Nichols*, No. 08 Civ. 8568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with the complaint, may also be considered on a motion to dismiss."); *accord Coakley* v. *42nd Pct. Case 458*, No. 08 Civ. 6206 (JSR), 2009 WL 3095529, at *3 (S.D.N.Y. Sept. 28, 2009); *see also Colon* v. *City of New York*, No. 16 Civ. 6425 (KPF), 2018 WL 740992, at *3 (S.D.N.Y. Feb. 6, 2018) (discussing consideration of *pro se* plaintiff's submissions on a motion to dismiss).

        The Court also considers exhibits to the Affirmation of Evan B. Citron in Support of Defendant's Motion to Dismiss ("Citron Aff." (Dkt. #22)), including the February 9, 2018 Settlement Agreement and General Release of All Claims (the "Settlement Agreement" (*id.*, Ex. B)).  On a motion to dismiss, the Court can draw facts from "documents attached to, incorporated by reference in, or integral to" the complaint.  *Philip Morris Cap. Corp.* v. *Nat'l R.R. Passenger Corp.*, No. 19 Civ. 10378 (JMF), 2021 WL 797671, at *1 (S.D.N.Y. Feb. 26, 2021).  A document is integral to a complaint "where the complaint relies heavily upon its terms and effect."  *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  As the Amended Complaint "relies heavily" on the Settlement Agreement, the Court finds that the Agreement is integral to the Amended Complaint.  *See id.* (observing that "[i]n most instances" where courts deem a document "integral to the complaint," "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls" (quoting *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006))).  The Court also considers certain filings made in the Initial Action, including Plaintiff's Complaint ("Initial Complaint" (Citron Aff., Ex. A)) and the Stipulation of Dismissal ("Initial Dismissal" (*id.*, Ex. C)), as they are public records of which the Court may take judicial notice.  *See Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))); *see also In re Enron Corp.*, 379 B.R. 425, 431 n.18 (S.D.N.Y. 2007) ("Judicial notice of public records such as court filings, is clearly appropriate.").

Complaint ¶¶ 4, 9).  Prior to 2019, Defendant Inter-Con Security Systems, Inc. was contracted by the United States Marshals Service to provide security services for the United States District Court for the Southern District of New York.  (Sept. 17, 2020 Tr. 3:16-21, 4:14-15).  On September 28, 2015, Defendant terminated Plaintiff from his employment as an SSO.  (FAC 5; Initial Complaint ¶ 16).  That termination gave rise to the Initial Action, which was filed in this District in May 2017.  (*See generally* Initial Complaint).

In his Complaint in the Initial Action, Plaintiff alleged that in May 2015, he underwent a mandatory medical exam, which resulted in a "deferred medical determination pending further documentation and supplemental medical testing." (Initial Complaint ¶ 11).  Plaintiff further alleged that he was unable to complete the supplemental medical exam, as Defendant refused to provide him with a required pre-authorization form.  (*Id.* at ¶¶ 12-15).  Defendant subsequently terminated Plaintiff that September for "failure to submit to the supplemental medical exam." (*Id.* at ¶ 16).  Plaintiff concluded that Defendant had engaged in "illegal discrimination, based on age, disability, and perceived disability," in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634 (the "ADEA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 to 12213 (the "ADA").  (*Id.* at ¶¶ 2, 17).

---

For ease of reference, the Court refers to Defendant's opening brief as "Def. Br." (Dkt. #21); Plaintiff's opposing brief as "Pl. Opp." (Dkt. #27); and Defendant's reply brief as "Def. Reply" (Dkt. #28).

On February 9, 2018, the parties entered into a Settlement Agreement releasing Defendant from, among other things, claims for violations of the "Americans with Disabilities Act and all related federal laws prohibiting employment discrimination of all types." (Settlement Agreement § 2(a)). In turn, Defendant was obligated to "begin the application process for GALLO to become re-employed as [an SSO] assigned to the United States District Court for the Southern District of New York" and, subject to Plaintiff meeting the required qualifications, place him "in the next available open [SSO] position." (*Id.* at § 1(b)). The Initial Action was thereafter dismissed with prejudice pursuant to a stipulation of dismissal entered on February 19, 2018. (*See* Initial Dismissal).

In June 2018, Defendant re-hired Plaintiff to an SSO position, but Plaintiff alleges that he was not reinstated to his prior level of seniority, and as a result, was not permitted to select his work shifts, and was not given the vacation leave or sick leave to which he was entitled. (Sept. 17, 2020 Tr. 10:2-4, 11:5-12:3, 12:25-13:14; Pl. Opp. 3). Defendant's contract with the United States Marshals Service was subsequently assumed by Akal Security ("Akal"), and Plaintiff alleges that Akal restored his seniority. (Sept. 17, 2020 Tr. 13:14-20; Pl. Opp. 3). However, the Court understands that Akal thereafter lost its contract to another security provider. (Sept. 17, 2020 Tr. 14:15-18). Thus, although Plaintiff continues to work as an SSO in this District, he is no longer employed by either Defendant or Akal. (*Id.* at 14:23-15:11).

4

**B.    The Instant Litigation**

Plaintiff commenced this action with the filing of his original Complaint in New York State Supreme Court, County of New York, on January 15, 2020. (*See* Dkt. #1-1).  On June 25, 2020, Defendant removed the action to this Court based on diversity jurisdiction.  (Dkt. #1).  Defendant subsequently filed a motion to dismiss for insufficient service of process on July 2, 2020.  (Dkt. #5-6).  On July 6, 2020, the Court denied Defendant's motion without prejudice, as Plaintiff had not yet appeared in the action, and Defendant had failed to comply with the Court's requirement of a pre-motion submission before filing a motion to dismiss.  (Dkt. #7).  The following day, Defendant filed a letter requesting a pre-motion conference regarding its anticipated renewed motion to dismiss.  (Dkt. #8).

On July 27, 2020, the Court ordered Plaintiff to show cause why the case should not be dismissed for failure to prosecute (Dkt. #9), and subsequently dismissed the order on September 4, 2020, upon Plaintiff's appearance in this action (Dkt. #12).  On September 17, 2020, the Court held a pre-motion conference with the parties regarding Defendant's anticipated motion to dismiss.  (Dkt. #14 (transcript)).  At the conference, the Court granted Plaintiff leave to amend his complaint (*id.* at 41:21-43:15), and Plaintiff proceeded to file his Amended Complaint on October 15, 2020 (Dkt. #16).

On October 30, 2020, Defendant submitted a letter seeking the Court's leave to move to dismiss the Amended Complaint.  (Dkt. #17).  The Court issued a memorandum endorsement on November 2, 2020, granting

5

Defendant's request and setting a briefing schedule on Defendant's motion to dismiss. (Dkt. #19). Pursuant to that schedule, Defendant filed its opening brief and supporting papers on December 2, 2020. (Dkt. #20-22).[3] On January 26, 2021, the Court issued an Order noting that Plaintiff's opposition papers were due on January 18, 2021, but granting him an extension through February 12, 2021, in recognition of his *pro se* status. (Dkt. #25). On February 11, 2021, the Court granted Plaintiff's request for a further extension of the briefing deadline through March 1, 2021. (Dkt. #26). Plaintiff's opposition brief was thereafter filed on March 3, 2021. (Dkt. #27). Briefing concluded with the submission of Defendant's reply brief on March 15, 2021. (Dkt. #28).

## DISCUSSION

Plaintiff's operative pleadings appear to assert the same allegations of age discrimination that were the subject of the Initial Action. (*Compare* FAC 5-7,

---

[3]    Defendant's briefing provides additional context about the Settlement Agreement and the parties' post-Settlement Agreement conduct and discussions. (*See generally* Def. Br.; Def. Reply). While the Court appreciates Defendant's efforts to contextualize Plaintiff's admittedly sparse pleadings, it does not take Defendant's factual assertions into consideration in adjudicating the instant motion to dismiss. *See Taub* v. *Big M, Inc.*, 719 F. Supp. 2d 325, 327 (S.D.N.Y. 2010) ("The allegations regarding the terms of the parties' agreement contained in Defendant's brief do not form a proper basis for a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); *see also Friedl* v. *City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("[A] district court errs when it … relies on factual allegations contained in legal briefs or memoranda on a 12(b)(6) motion to dismiss." (internal citation omitted)). That said, as discussed *infra*, while the Court will not dismiss Plaintiff's Amended Complaint on the basis of factual allegations contained in Defendant's briefing, some of Defendant's representations regarding the Agreement have given the Court reason to grant Plaintiff leave to amend certain of his pleadings.

*with* Initial Complaint ¶¶ 12-16).[4]   Plaintiff further alleges that Defendant

violated the terms of the Settlement Agreement.  (FAC 7).  In particular,

Plaintiff alleges that Defendant has failed to: (i) reimburse him for $1,250 for a

stress test that he was required to undergo under the terms of the Agreement;

(ii) reinstate his seniority and full-time status; and (iii) recognize the vacation

time he "accrued" during the period between his termination and his re-hiring.

(Pl. Opp. 3).  Defendant has now moved to dismiss the Amended Complaint

under Federal Rule of Civil Procedure 12(b)(6) on the grounds that (i) Plaintiff

waived his age discrimination claims with the execution of the Settlement

Agreement (Def. Br. 3-5; Def. Reply 2-3); (ii) Plaintiff has failed to plead facts

sufficient to establish a breach of contract claim (Def. Br. 5; Def. Reply 3); and

(iii) Defendant substantially performed its obligations under the Settlement

Agreement (Def. Br. 5-6; Def. Reply 3-5).

## A.    Applicable Law

### 1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6), a plaintiff must plead sufficient factual allegations "to state

a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550

U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

---

[4]    Plaintiff's Amended Complaint asserts a claim for "age and employment discrimination," which the Court understands to be a claim of age discrimination by Defendant, his former employer.  (*See* FAC 2).

defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  In considering the motion, a court must "draw all reasonable inferences in Plaintiffs' favor" and "assume all well-pleaded factual allegations to be true." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).  That said, a court need not accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (citation and internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider not only the complaint itself, but also any written instrument attached to the complaint as an exhibit, incorporated by reference in the complaint, or that is integral to the complaint.  *Philip Morris Cap. Corp.* v. *Nat'l R.R. Passenger Corp.*, No. 19 Civ. 10378 (JMF), 2021 WL 797671, at *1 (S.D.N.Y. Feb. 26, 2021); *accord Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

### 2.    The Court's Consideration of *Pro Se* Submissions

Generally speaking, courts are directed to "afford … a special solicitude"
to *pro se* litigants, and, in this regard, to construe their pleadings and motion
papers liberally.  *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  Under
this directive, the Court is to read Plaintiff's "submissions to raise the strongest
arguments they suggest."  *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154,
156 (2d Cir. 2017) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir.
2007) (internal quotation marks omitted)); *see also* Fed. R. Civ. P. 8(e)
("Pleadings must be construed so as to do justice.").

The Court notes that Plaintiff secured the services of the New York Legal
Assistance Group ("NYLAG") in preparing his opposition brief.  (*See* Pl. Opp. 1
n.1).  This Court has previously declined to afford special solicitude to *pro se*
plaintiffs whose submissions were prepared with NYLAG's assistance.  *See*
*Littlejohn* v. *Consol. Edison Co. of N.Y., Inc.*, No. 18 Civ. 6336 (KPF), 2019 WL
3219454, at*1 n.1 (S.D.N.Y. July 17, 2019); *Price* v. *City of New York*, No. 15
Civ. 5871 (KPF), 2018 WL 3117507, at *5 n.5 (S.D.N.Y. June 25, 2018).  The
Court remains cognizant, however, that "[i]f *pro se* litigants who receive limited
assistance from NYLAG lose all protections afforded to them, NYLAG faces a
catch-22: providing less than full representation will harm litigants by
eliminating the special care otherwise afforded."  *Antrobus* v. *N.Y.C. Health &
Hosps. Corp.*, No. 19 Civ. 7449 (KPF), 2021 WL 964438, at *6 (S.D.N.Y.
Mar. 15, 2021) (internal quotation marks omitted) (quoting *Campa* v. *Entergy
Nuclear Operations, Inc.*, No. 17 Civ. 792 (KMK), 2019 WL 4221560, at *8

9

(S.D.N.Y. Sept. 5, 2019)).  As it did in *Antrobus*, this Court finds that it need not resolve this conflict at this time, as Plaintiff's allegations are insufficient to state a claim for relief "even when read with special solicitude."  *Id.* [5]

## B.  Analysis

### 1.    The Settlement Agreement Bars Plaintiff's Age Discrimination Claim

Defendant first argues that Plaintiff is attempting to relitigate an age discrimination claim that was resolved in the Initial Action and extinguished by the Settlement Agreement.  (Def. Br. 3-5).  Plaintiff rejoins that, in reaching the Agreement, Defendant "used a play on words and deceitful tactics."  (Pl. Opp. 3).  The Court finds that Plaintiff has not provided a basis for invalidating the Settlement Agreement, and that he is barred from litigating the instant age discrimination claim under the terms of that Agreement.

#### a.    Plaintiff's Age Discrimination Claim Falls Within the Scope of the Settlement Agreement

"Stipulations of settlement are judicially favored and may not lightly be set aside."  *Kephart* v. *Certain Underwriters at Lloyd's of London*, 427 F. Supp. 3d 508, 517 (S.D.N.Y. 2019) (alteration omitted) (quoting *United States* v.

---

[5]    In recognition of the special solicitude owed *pro se* litigants, the Court declines to strike Plaintiff's opposition brief as untimely or to dismiss the action pursuant to Federal Rule of Civil Procedure 41(b).  In its reply, Defendant submits that Plaintiff's delays in filing his opposition provide the Court with grounds to either strike Plaintiff's submission or to dismiss the action due to Plaintiff's "failure to 'prosecute or to comply with … a court order.'"  (Def. Reply 1 (quoting Fed. R. Civ. P. 41(b))).  In support, Defendant refers the Court to *Pappas* v. *Ford Motor Co.*, 7 F. Supp. 2d 22, 28 (D.D.C. 1998), in which case a party's submission was filed six months after the deadline and without the court's leave.  Given both Plaintiff's *pro se* status and that his opposition brief was filed a mere two days after the deadline, the Court will neither strike his opposition brief nor dismiss the action outright, and will instead consider Defendant's motion on the merits.

*Twenty Miljam-350 IED Jammers*, 669 F.3d 78, 88 (2d Cir. 2011)).  Further, "[u]nder New York law … 'a valid release constitutes a complete bar to an action on a claim which is the subject of the release.'"  *Interpharm* v. *Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) (quoting *Centro Empresarial Cempresa S.A.* v. *Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011)).[6]  Of relevance here, "an employee can release federal claims of discrimination, whether under the ADA, Title VII, the ADEA or similar statutes … provided the waiver is knowing and voluntary."  *Hseuh* v. *Bank of N.Y.*, No. 05 Civ. 5345 (JSR) (AJP), 2005 WL 2842069, at *3 (S.D.N.Y. Oct. 31, 2005) (collecting cases).  "Although a defendant has the initial burden of establishing that it has been released from any claims, a signed release 'shifts the burden of going forward … to the [plaintiff] to show that there has been fraud, duress or some other fact which will be sufficient to void the release.'"  *Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276 (alterations in *Centro Empresarial Cempresa S.A.*) (quoting *Fleming* v. *Ponziani*, 24 N.Y.2d 105, 111 (1969)).

Defendant contends that Plaintiff has "waived his ability" to bring his age discrimination claim, inasmuch as the Settlement Agreement is "specifically premised on and arising out of the alleged discrimination claims asserted in

---

[6]     Pursuant to the Settlement Agreement's choice of law provision, New York law governs the instant dispute.  (*See* Settlement Agreement § 10(c) ("Each Party agrees this Agreement is entered into under, and shall be construed under and governed by, the procedural and substantive laws of the State of New York.")).  *See Lisa Cooley, LLC* v. *Native, S.A.*, No. 20 Civ. 5800 (VEC), 2021 WL 860591, at *2 (S.D.N.Y. Mar. 5, 2021) ("A choice of law provision in a contract governs disputes about the 'existence or validity of that contract.'" (quoting *Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 50 (2d Cir. 2004))).

the instant action." (Def. Br. 4-5).  Comparing the allegations in the Initial

Complaint and the Amended Complaint, the Court agrees that Plaintiff is

asserting the same age discrimination claim brought in the Initial Action.  In

particular, both claims arise from Defendant's allegedly improper withholding

of a pre-authorization form required for a supplemental medical exam, and

subsequent termination of Plaintiff for failing to submit to the exam.  (*Compare*

FAC 5-6, *with* Initial Complaint ¶¶ 12-16).  And under the terms of the

Agreement, Plaintiff agreed to "irrevocably and unconditionally fully release"

Defendant from claims he possessed as of the effective date of the Agreement,

including any claims arising from violations of "the Americans with Disabilities

Act and all related federal laws prohibiting employment discrimination of all

types." (Settlement Agreement § 2(a)).  Accordingly, Defendant has

demonstrated that it has been released from certain claims, and Plaintiff's age

discrimination claim will be barred under the terms of the Agreement, provided

that (i) Plaintiff's waiver was valid and voluntary and (ii) Plaintiff provides no

other basis for voiding the Agreement.  *See Centro Empresarial Cempresa S.A.*,

17 N.Y.3d at 276; *see also Ford* v. *Fourth Lenox Terrace*, No. 09 Civ. 2660

(RWS), 2011 WL 2848654, at *5 (S.D.N.Y. July 18, 2011) ("[A] release that is

clear and unambiguous on its face and which is knowingly and voluntarily

entered into will be enforced." (quoting *Pampillonia* v. *RJR Nabisco, Inc.*, 138

F.3d 459, 463 (2d Cir. 1998))).

### b.     Plaintiff Knowingly and Voluntarily Waived His Age Discrimination Claim

"In determining whether an employee agreed to waive [his] legal rights 'knowingly, willfully and free from coercion,' a district court must employ a 'totality of the circumstances' standard." *Figueroa* v. *MRM Worldwide*, No. 12 Civ. 4115 (HBP), 2014 WL 902953, at *6 (S.D.N.Y. Mar. 7, 2014) (quoting *Bormann* v. *AT & T Commc'ns*, 875 F.2d 399, 403 (2d Cir. 1989)).  The Second Circuit has adopted the following non-exhaustive list of factors relevant to this inquiry:

> [i] the plaintiff's education and business experience, [ii] the amount of time the plaintiff had possession of or access to the agreement before signing it, [iii] the role of plaintiff in deciding the terms of the agreement, [iv] the clarity of the agreement, [v] whether the plaintiff was represented by or consulted with an attorney, and [vi] whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Bormann*, 875 F.2d at 403 (citation omitted).  Additional factors include "whether an employer encourages or discourages an employee to consult an attorney" and "whether the employee had a fair opportunity to do so."  *Id.* (citation omitted).

On the current record, the Court is unable to opine on the first *Bormann* factor.  However, the Court finds that the remaining factors strongly indicate that Plaintiff knowingly and willingly waived his discrimination claims.  *First*, Plaintiff was represented by counsel in the Initial Action.  *See Gallo* v. *Inter-Con Sec. Sys., Inc.*, No. 17 Civ. 3369 (AKH) (S.D.N.Y.), Dkt. #31-1 (correspondence between counsel for Plaintiff and Defendant regarding the Settlement

13

Agreement).  This factor alone weighs in favor of finding Plaintiff's knowing and voluntary waiver.  *See Cantey* v. *Mount Vernon City Sch. Dist.*, No. 16 Civ. 2669 (NSR), 2018 WL 3315574, at *7 (S.D.N.Y. July 5, 2018) ("Where plaintiffs are assisted by counsel, there is a strong interest in upholding 'the validity of release agreements.'" (quoting *Mandavia* v. *Columbia Univ.*, 912 F. Supp. 2d 119, 131 (S.D.N.Y. 2012))).  *Second*, Plaintiff's counsel received a draft of the Settlement Agreement on November 7, 2017, several months before the parties entered into the Agreement on February 9, 2018.  *See Gallo*, No. 17 Civ. 3369 (AKH), Dkt. #31-1 at 7.  *Third*, the Settlement Agreement itself states that: (i) "[e]ach Party acknowledges such Party has participated in the negotiation of this Agreement and the drafting and preparation of this Agreement" (Settlement Agreement § 10(b)); (ii) "GALLO has been advised in writing, and has been advised by INTER-CON, to consult with an attorney of his choosing regarding the contents and consequences of this Agreement prior to signing this Agreement" (*id.* at § 9(a)); and (iii) "GALLO has been advised to consult with an attorney prior to executing this Agreement and has done so" (*id.* at § 10(j)). This indicates both that Plaintiff was involved in negotiating the terms of the Agreement, and that he was advised to consult with an attorney and did so. *Fourth*, the language of the Agreement clearly and unambiguously obliges Plaintiff to release his existing discrimination claims against Defendant in exchange for Defendant's efforts to place Plaintiff in an SSO position.  (*See id.* at §§ 1-2).  *See Littlejohn*, 2019 WL 3219454, at *9 (finding a similar release "clearly and unambiguously applies to, and therefore bars, Plaintiff's current

14

claim"). And *lastly*, courts have found that similar consideration in exchange for a broad waiver of claims is sufficient for these purposes. *See id.* at *8 n.6 ("The reinstatement of Plaintiff to his position of Mechanic with [Defendant] was valid consideration for his waiver of claims." (collecting cases)).

Given that the majority of the *Bormann* factors militate in favor of finding waiver, and in the absence of any allegations by Plaintiff to the contrary, the Court finds that Plaintiff waived his discrimination claims knowingly and willingly. *See Littlejohn*, 2019 WL 3219454, at *12 (concluding that "no reasonable jury could find that "Plaintiff did not knowingly and voluntarily waive his right to continue this lawsuit" where the majority of the *Bormann* factors supported Defendant); *see also Westbrooke* v. *Bellevue Hosp. Ctr.*, No. 16 Civ. 9845 (RA), 2018 WL 4189514, at *6 (S.D.N.Y. Aug. 31, 2018) ("When 'the balance of the *Bormann* factors tips decidedly in [the defendant's] favor,'… granting a motion to dismiss on the basis of a release is appropriate." (quoting *Smith* v. *JPMorgan Chase*, No. 15 Civ. 808 (PAE), 2016 WL 5339548, at *5 (S.D.N.Y. Sept. 23, 2016))).

### c.    Plaintiff Provides No Other Basis for the Settlement Agreement's Invalidation

Plaintiff argues that he abided by the terms of the Settlement Agreement "100 percent," and asserts that the Defendant "used a play on words and deceitful tactics in the agreement." (Pl. Opp. 3). To the extent Plaintiff seeks the invalidation of the Settlement Agreement on this basis, these allegations do not suffice.

15

Plaintiff's contention that Defendant "used a play on words" and "deceitful tactics" is wholly conclusory and fails to show fraud, duress, or any other grounds for invalidating the Settlement Agreement.  (*See* Pl. Opp. 3).  In particular, Plaintiff fails to allege how Defendant employed "a play on words" to create any ambiguity in the Agreement, nor does he allege any specific "deceitful tactic" that would have induced him to sign the Agreement.  His unmoored assertions fail to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See United States ex rel. Ladas* v. *Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) ("Rule 9(b) requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" (quoting Fed. R. Civ. P. 9(b))).

The allegations are also insufficient to establish duress, as Plaintiff "fails to allege how or what forced him to enter into the agreements, identify the alleged wrongful threat, or explain how the alleged threat prevented the exercise of his free will."  *Goonewardena* v. *Forster & Garbus LLP*, No. 18 Civ. 29 (MKB), 2019 WL 121677, at *8 (E.D.N.Y. Jan. 7, 2019); *cf. Mandavia*, 912 F. Supp. 2d at 129 ("Plaintiff invokes the magical word 'duress,' but in so doing he merely states a legal conclusion unsupported by enough facts to cross the line into the realm of plausible.").  Moreover, given that the Agreement unambiguously releases Defendant "irrevocably and unconditionally … from liability … for any and all claims … arising on or before the effective date of this Agreement … including … those arising out of or relating in any way to GALLO's employment" (Settlement Agreement § 2), the Court finds that

16

Plaintiff's conclusory allegations "are insufficient to overcome [the Agreement's] unambiguous language." *W.P. Carey, Inc.* v. *Bigler*, No. 18 Civ. 585 (KPF), 2019 WL 1382898, at *14 (S.D.N.Y. Mar. 27, 2019) (citing *N.Y.C. Sch. Constr. Auth.* v. *Koren-DiResta Constr. Co.*, 671 N.Y.S.2d 738, 739 (1st Dep't 1998)); *cf. Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276 ("If 'the language of a release is clear and unambiguous, the signing of a release is a 'jural act' binding on the parties'" (quoting *Booth* v. *3669 Del.*, 92 N.Y.2d 934, 935 (1998))).[7]

In sum, Plaintiff has provided no basis for the Court's invalidation of the Settlement Agreement.  He is therefore barred from bringing his age

---

[7]    Even had Plaintiff put forth nonconclusory allegations of wordplay or deceitful conduct on Defendant's part, the result would likely have been the same, because courts have found that such misrepresentations do not "necessarily 'render the release not knowingly and voluntarily entered into.'" *Smith* v. *JPMorgan Chase*, No. 15 Civ. 808 (PAE), 2016 WL 5339548, at *8 (S.D.N.Y. Sept. 23, 2016) (alteration and internal quotation marks omitted) (quoting *Pampillonia* v. *RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998)).  Given "the plain language of the Release, which [Plaintiff] had ample time to consider," and which "evinces the parties' unmistakable intent that [Plaintiff] relinquish all claims against [Defendant]" Plaintiff cannot now "avoid the consequences of this provision by claiming that [he] was misled as to its scope[.]" *Id.*

Separately, although Defendant did not raise this argument in its briefing, the Court finds that Plaintiff may have effectively ratified the Settlement Agreement, precluding Plaintiff from now pursuing the Agreement's invalidation.  "For a contract to be void, a party must 'promptly repudiate the contract' or else 'be deemed to have ratified it.'" *Cater* v. *New York*, No. 17 Civ. 9032 (RWS), 2019 WL 430266, at *5 (S.D.N.Y. Feb. 4, 2019) (quoting *VKK Corp.* v. *Nat'l Football League*, 244 F.3d 114, 122-23 (2d Cir. 2001)).  Here, Plaintiff waited almost two years before pursuing any challenge to the Agreement. During this time, he was "re-hired by the defendant," and alleges that he performed "100 percent" of his obligations under the Agreement. (Pl. Opp. 3).  Plaintiff's delay in pursuing this litigation, and his acceptance of consideration in the form of a position with Defendant, may provide a separate basis for finding the Agreement enforceable. *See Cater*, 2019 WL 430266, at *6 ("Plaintiff cannot have it both ways; she cannot retain the benefit of [her] bargain while circumventing her own obligations thereunder." (alteration in *Cater*) (internal quotation marks omitted) (quoting *Hewitt* v. *Leblang*, No. 12 Civ. 1713 (PKC), 2012 WL 2820274, at *7 (S.D.N.Y. July 5, 2012))); *see also VKK Corp.*, 244 F.3d at 123 ("Delays as short as six months have been held to constitute forfeiture of the claim.").

discrimination claim against Defendant, and that claim is dismissed.[8]  The
Court next considers Plaintiff's contention that Defendant has violated the
terms of the Settlement Agreement, brought under the rubric of breach of
contract. [9]

### 2.    Plaintiff Fails to Plead a Breach of Contract Claim

To successfully plead a breach of contract claim, a complaint must
allege: "[i] the existence of an agreement; [ii] adequate performance of the
contract by the plaintiff; [iii] breach of contract by the defendant; and
[iv] damages."  *Eternity Glob. Master Fund Ltd.* v. *Morgan Guar. Tr. Co. of N.Y.*,
375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp.* v. *Segui*, 91 F.3d 337,

---

[8]    Although Defendant did not put forth a *res judicata* argument in its briefing, the Court
understands that Plaintiff's age discrimination claim may also be barred under that
doctrine.  "*Res judicata* dictates that '[a] final judgment on the merits of an action
precludes the parties or their privies from relitigating issues that were or could have
been raised in that action.'"  *Cho* v. *Seventh Ave. Fine Foods Corp.*, No. 11 Civ. 3436
(KPF), 2016 WL 1717214, at *3 (S.D.N.Y. Apr. 28, 2016) (alteration in *Cho*) (quoting *St.
Pierre* v. *Dyer*, 208 F.3d 394, 399 (2d Cir. 2000)).  In particular, *res judicata* bars "later
litigation if [an] earlier decision was [i] a final judgment on the merits, [ii] by a court of
competent jurisdiction, [iii] in a case involving the same parties or their privies, and
[iv] involving the same cause of action."  *Id.* (quoting *In re Teltronics Servs., Inc.*, 762
F.2d 185, 190 (2d Cir. 1985)).  Each of those requirements is met here.  Notably, the
Settlement Agreement and Initial Dismissal constitute a final judgment for *res judicata*
purposes.  *See United States ex rel. Sarafoglou* v. *Weill Med. Coll. of Cornell Univ.*, 451 F.
Supp. 2d 613, 620 (S.D.N.Y. 2006) (collecting cases holding that a dismissal with
prejudice arising out of a settlement agreement operates as a final judgment).  And as
noted above, Plaintiff is asserting the very same allegations of age discrimination first
put forth in the Initial Action.  (*Compare* FAC 5, *with* Initial Complaint ¶¶ 12-16).  Thus,
his age discrimination claim necessarily arises from the same "nucleus of operative fact"
as the discrimination claim first brought in the Initial Action.  *See id.* ("Because the
false claims from the current complaint all arise from the same nucleus of operative
fact, they are foreclosed by the Settlement Agreement under principles of *res judicata*.").

[9]    The Court observes that Plaintiff's goal of holding Defendant to its purported obligations
under the Agreement would appear to be inconsistent with any argument that the
Agreement is invalid.  While the Court next addresses Plaintiff's allegations that
Defendant failed to adhere to the requirements of the Agreement, those arguments
"bear[] no weight on the issue of the [Agreement's] validity."  *Cantey* v. *Mount Vernon
City Sch. Dist.*, No. 16 Civ. 2669 (NSR), 2018 WL 3315574, at *7 (S.D.N.Y. July 5, 2018).

348 (2d Cir. 1996)).  "A breach of contract claim will be dismissed, however, as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated."  *Manchanda* v. *Navient Student Loans*, No. 19 Civ. 5121 (WHP), 2020 WL 5802238, at *4 (S.D.N.Y. Sept. 29, 2020) (quoting *Negrete* v. *Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016)).

Both parties agree that their obligations are governed by the Settlement Agreement.  (*See* Def. Br. 3-4; Pl. Opp. 3).  Plaintiff alleges that while he "[fulfilled] all of [his] obligations" under the Settlement Agreement, Defendant breached the Agreement by failing to (i) reimburse him in the amount of $1,250 for a stress test required under the terms of the Agreement; (ii) reinstate his contract seniority and hire him on a full-time basis; and (iii) recognize the vacation days he accrued during the period between his termination and his re-hiring.  (FAC 7; Pl. Opp. 3).  As a result of these breaches, Plaintiff alleges that he incurred damages amounting to $93,950.  (FAC 6).[10]

At the outset, the Court finds that Plaintiff has failed to plead a breach of the Agreement because he has not identified specific provisions that Defendant allegedly breached — "an essential requirement for a breach of contract claim." *Orange Cnty. Choppers, Inc.* v. *Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 554 (S.D.N.Y. 2007) (collecting cases).  Ordinarily, the Court's analysis of the

---

[10]     Plaintiff also appears to be seeking the costs incurred in litigating both this action and the Initial Action, amounting to $1,140.  (FAC 6).

breach of contract claim would end here.  However, and in noticeable tension
with certain of its dismissal arguments, Defendant has thrown Plaintiff a
proverbial lifeline:  That is, notwithstanding the Agreement's silence on these
points, Defendant appears to concede that the parties agreed in the Settlement
Agreement that (i) "Mr. Gallo would be reimbursed $1,250.00 for medical
expenses incurred"; (ii) Defendant would "restore Mr. Gallo's contract seniority
as if he had never been terminated"; and (iii) Defendant would "endeavor, in
good faith," to place Plaintiff "in the next full time [SSO] night shift position
subject to union seniority." (Def. Br. 2).  As discussed in the remainder of this
Opinion, these concessions do not ultimately save Plaintiff's current claims of
breach, though they are the primary basis for the Court's decision to grant
Plaintiff leave to amend certain of his pleadings.

a.    **Reimbursement of Medical Expenses**

Plaintiff first alleges that Defendant has failed to reimburse him for
$1,250 in medical expenses.  Plaintiff claims he was owed this sum upon
fulfillment of his obligations to "retake a stress test … [and] complete [a]
medical and firearms course." (Pl. Opp. 3).  Defendant appears not to dispute
that it was obligated to make this payment to Plaintiff, but explains that
Plaintiff must first supply "the necessary documentation and receipts to trigger
the reimbursement process." (Def. Br. 5).  The Court finds that Plaintiff's
allegations do not establish a breach of the Agreement.

*First,* as previously noted, Plaintiff has not identified any provision of the
Settlement Agreement obligating Defendant to make a payment of $1,250.  And

the Court has carefully reviewed the Settlement Agreement, and has been unable to identify any such provision.  (*See generally* Settlement Agreement). *See Orange Cnty. Choppers, Inc.*, 497 F. Supp. 2d at 554; *cf. Hadami, S.A.* v. *Xerox Corp.*, 272 F. Supp. 3d 587, 597-98 (S.D.N.Y. 2017) ("[Plaintiff] does no more than list terms in the Undated Letter and conclusorily allege that Xerox violated them.  Such 'naked assertions' of breach do not state a claim." (citation omitted)).  *Second*, the Court will not impose additional requirements on Defendant that are not contemplated by the Agreement.  *See Sussman Sales Co.* v. *VWR Int'l, LLC*, No. 20 Civ. 2869 (KPF), 2021 WL 1165077, at *15 (S.D.N.Y. Mar. 26, 2021) ("[W]here the parties negotiated specific requirements and obligations at the time they entered into the [a]greement, the Court will not belatedly impose additional requirements upon [d]efendant." (collecting cases)).

*Lastly*, Plaintiff's allegations do not establish that he adequately performed under the Agreement.  *See Eternity Glob. Master Fund Ltd.*, 375 F.3d at 177.  Plaintiff alleges in the FAC that he incurred $1,250 damages for "medical" (FAC 6), and later contends in his opposition brief that he is owed $1,250 for a "stress test," and that Defendant was "well aware" that he passed this stress test (Pl. Opp. 3).  To be sure, the adequacy of Plaintiff's allegations of performance can be difficult to gauge, in the absence of specific provisions in the Settlement Agreement.  However, there are certain fundamental pleading deficiencies:  Plaintiff does not allege, for example, when he completed this test, what the cost of the stress test was, or if and when the results were conveyed

to Defendant.[11]  For its part, Defendant has represented that it will reimburse Plaintiff upon his submission of the requisite paperwork (Def. Reply 4 n.2), and the Court's hope is that this particular dispute can be resolved without further judicial intervention.  But at this time, Plaintiff's allegations that Defendant has failed to reimburse him for medical expenses are insufficient to sustain a breach of contract claim.

### b. Reinstatement of Plaintiff's Seniority and Vacation Day Accrual

Plaintiff also alleges that, in contravention of "[t]he conditions ... agreed upon by both parties," he was not "re-hired with all his seniority and full time status." (Pl. Opp. 3).  Specifically, he alleges that he only received "full time status" on January 1, 2019, but that this position was given to him by Akal, rather than by Defendant.  (*Id.*).  He further alleges that as a consequence of Defendant's failure to reinstate his seniority, he was not provided with "all vacation retroactive to the original day he left." (*Id.*).

Once again, Plaintiff fails to identify any provision of the Agreement that has been breached by these alleged failures, and the Court has been unable to discern any provision in the Agreement requiring Defendant to return Plaintiff to full seniority and grant him all accrued vacation time.  Rather, the Agreement merely obliges Defendant to "begin the application process for

---

[11]     Despite this lack of detail in Plaintiff's operative pleadings, the Court understands from a prior conference with the parties that Plaintiff may have completed and passed a stress test on some occasion between February and June 2018.  (*See* Sept. 17, 2020 Tr. 10:15-19).  However, this allegation does not suffice either to establish the adequacy of Plaintiff's performance or to salvage this portion of his breach of contract claim.

GALLO to become re-employed" and "place GALLO in the next available open [SSO] position," assuming he passed all qualifications "set forth by the United States Marshals Service[.]"  (Settlement Agreement § 1(b)).  Plaintiff himself concedes that he was re-hired by Defendant (*see* Pl. Opp. 3), and thus Defendant appears to have met its obligations under the Agreement.

Even accepting Defendant's representations that the supplemental terms regarding seniority and night shifts were encompassed in the parties' Agreement, Plaintiff's conclusory allegations do not suffice to state a breach of contract claim.  In particular, Plaintiff alleges that he only received "full-time status" on January 1, 2019 from Akal, but does not allege with any specificity what he was entitled to under his contract seniority, and thus the Court cannot determine whether Defendant failed to make a "good faith" effort to reinstate him.  *Cf. Frontline Processing Corp.* v. *Merrick Bank Corp.*, No. 13 Civ. 3956 (RPP), 2014 WL 837050, at *3 (S.D.N.Y. Mar. 3, 2014) (dismissing claims that failed to specify "how the Defendant allegedly failed to perform on its contractual obligations").[12]  Moreover, Plaintiff asserts that he was entitled to "all vacation retroactive to the original day he left" (Pl. Opp. 3), but he does not provide any basis for this representation, either in the parties' Settlement

---

[12]     While Plaintiff informed the Court in the September 17, 2020 conference in this matter that as a consequence of Defendant's failure to reinstate his seniority, he was not permitted to select his work shifts (Sept. 17, 2020 Tr. 10:2-4, 11:5-12:3), this lone statement does not establish a breach of the Settlement Agreement.  In particular, Plaintiff fails to provide the Court with a basis for finding that he was entitled to select his own shifts pursuant to the seniority to which he was due.  And even under Defendant's broad understanding of the Agreement, Defendant does not acknowledge that Plaintiff had any such entitlement.  The Court thus is unable to find a breach of contract based upon Plaintiff's statement at the September 17, 2020 conference.

Agreement or elsewhere.[13]  Once again, the Court will not "belatedly impose additional requirements upon Defendant."  *Sussman Sales Co.*, 2021 WL 1165077, at *15.

In sum, Plaintiff's conclusory allegations lack the necessary factual support to establish a breach of contract claim.

### 3.   The Court Will Grant Leave to Amend

Plaintiff has requested leave to amend should the Court find the Amended Complaint insufficient to withstand Defendant's motion to dismiss. (Pl. Opp. 5).  "Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'"  *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014) (quoting Fed. R. Civ. P. 15(a)(2)).  This permissive standard is consistent with this Circuit's "strong preference for resolving disputes on the merits."  *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks omitted). That being said, "it remains 'proper to deny leave to replead where ...

---

[13]     While Defendant represents that Plaintiff was not entitled to any vacation payout at the time of his final separation, the Court may not accept this factual assertion on the instant motion.  (*See* Def. Br. 6 (citing the "Collective Bargaining Agreement between the Association of Retired Law Enforcement Officers and Inter-Con, in effect from July 19, 2017 through September 30, 2020")).  *See Taub*, 719 F. Supp. 2d at 326.  For this reason, the Court will also not consider Defendant's argument that its performance of the Agreement "became impossible when Inter-Con ceased providing security services for the United States Marshal Service."  (Def. Reply 4).  Based on the pleadings and materials that it is permitted to consider in adjudicating Defendant's motion (*see* Background n.1), the Court is unable to determine if and when Defendant's performance of the Agreement was "rendered objectively impossible" (*see* Def. Reply 4).

amendment would be futile.'" *Gorman*, 2014 WL 7404071, at *2 (quoting *Hunt* v. *All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)).

As suggested earlier in this Opinion, the Court has found it difficult to reconcile the contractual obligations argued by Plaintiff and acknowledged by Defendant with the actual text of the Settlement Agreement.  This difficulty causes the Court to wonder if perhaps the parties have not provided the totality of the relevant settlement materials.  Given this disconnect in the record, as well as Plaintiff's *pro se* status, the Court believes that Plaintiff should be afforded "the opportunity to demonstrate that [his] claims deserve to be decided on the merits." *Hickman* v. *City of New York*, No. 19 Civ. 5292 (KPF), 2021 WL 2473806, at *7 (S.D.N.Y. June 17, 2021) (alteration in *Hickman*) (citing *Loreley*, 797 F.3d at 191).  The Court will accordingly grant Plaintiff leave to amend, but only as to his breach of contract claim.  Because the Settlement Agreement plainly bars Plaintiff's age discrimination claims, the Court finds that amendment of such claims would be futile.  *See Burke* v. *Verizon Commc'ns, Inc.*, No. 18 Civ. 4496 (PGG) (GWG), 2020 WL 6538748, at *8 (S.D.N.Y. Nov. 6, 2020) ("Where it appears that granting leave to amend is unlikely to be productive ... it is not an abuse of discretion to deny leave to amend." (citing *Lucente* v. *Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002))).

It is the Court's hope that "[with] the benefit of a ruling, ... [P]laintiff will ... see the necessity of amendment [and] be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 797 F.3d at 190.  More pointedly, the Court wishes to impress on Plaintiff *and*

Defendant that breach of contract claims, and defenses thereto, must be sourced to actual agreement provisions.  If, after careful consideration of this Opinion and the relevant materials, Plaintiff wishes to replead his breach of contract claim, he may do so on or before **September 29, 2021**.  If Plaintiff elects not to replead his breach of contract claim by that date, the Court will dismiss the remainder of this case with prejudice.

### 4.    The Court Denies Defendant's Request for Fees Under Federal Rule of Civil Procedure 41(d)

Defendant requests that the Court exercise its authority under Federal Rule of Civil Procedure 41(d) to "order the plaintiff to pay all or part of the costs of [the] previous action."  (Def. Br. 6-7 (quoting Fed. R. Civ. P. 41(d))).  Under this rule, "where a plaintiff ... voluntarily dismisses a lawsuit and then files a second suit against the same defendants predicated on the same facts, defendants may be entitled to recover their costs and attorneys' fees expended in defending the first suit and to stay the second suit until payment of those costs."  *Blauinsel Stiftung* v. *Sumitomo Corp.*, No. 99 Civ. 1108 (BSJ), 2001 WL 1602118, at *9 (S.D.N.Y. Dec. 14, 2001).  "In deciding whether to award costs under Rule 41(d), courts consider the plaintiff's motives in dismissing the initial action and the presence of bad faith, given Rule 41(d)'s 'clear and undisputed [purpose] as a deterrent to forum shopping and vexatious litigation.'"  *Cotivi, Inc.* v. *Deagle*, 501 F. Supp. 3d 243, 253 (S.D.N.Y. 2020) (alteration in *Cotivi*) (quoting *Horowitz* v. *148 S. Emerson Assocs. LLC*, 888 F.3d 13, 25 (2d Cir. 2018)).  Though a showing of bad faith is not required, a court "may refuse to impose [Rule 41(d) costs] on the plaintiff if it appears that there

26

was a good reason for the dismissal of the prior action or that the plaintiff financially is unable to pay the costs." *Preferred Freezer Servs., LLC* v. *Americold Realty Tr.*, No. 19 Civ. 2926 (VSB), 2020 WL 774132, at *3 (S.D.N.Y. Feb. 18, 2020) (quoting *Ramirez* v. *iBasis, Inc.*, No. 08 Civ. 5125 (KAM) (JMA), 2010 WL 1223589, at *3 (E.D.N.Y. Mar. 24, 2010) (alterations in *Ramirez*)).

As discussed above, the instant lawsuit is substantially "predicated on the same facts" as the Initial Action. *Blauinsel Stiftung*, 2001 WL 1602118, at *9. Nonetheless, the Court finds that an award of costs is not appropriate, as it would not serve the purposes of Rule 41(d). Defendant has made no argument that Plaintiff initiated this litigation in bad faith, and the Court finds no indication on the current record of any such improper motives by Plaintiff. *See Ramirez*, 2010 WL 1223589, at *5 ("[T]he court concludes that defendant has not established that plaintiff engaged in the kind of forum shopping and vexatious litigation against which Rule 41(d) is intended to guard."). Moreover, the Court recognizes that Plaintiff is proceeding *pro se*, and may not have had notice of the potential consequences of bringing this litigation. *Cf. Pelczar* v. *Pelczar*, No. 16 Civ. 55 (CBA) (LB), 2017 WL 3105855, at *2 (E.D.N.Y. July 20, 2017) ("The Court highlights [Rule 41(d)] to put Plaintiff, who is proceeding *pro se*, on notice of the potential consequences of refiling the same or substantially similar causes of action, in this or any other court." (citation and internal quotation marks omitted)). Lastly, the Initial Action was dismissed for "good reason" — the parties resolved the dispute with the execution of their

Settlement Agreement.  For all these reasons, the Court finds that it would be inappropriate to impose costs on Plaintiff.

Defendant requests in the alternative that the Court hold a settlement conference with the parties "to obviate the need for protracted litigation." (Def. Br. 7; Def. Reply 5).  The Court agrees that a settlement conference before the designated magistrate judge, a Court-appointed mediator, or this Court may be the most prudent course of action in this case.  However, both parties will need to express interest in a settlement conference before the Court will facilitate one.  Should the parties wish to pursue settlement discussions upon the submission of Plaintiff's Second Amended Complaint, they should advise the Court of same.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss is GRANTED, and Defendant's motion for fees is DENIED.  Plaintiff's age discrimination claim is dismissed with prejudice, and his breach of contract claim is dismissed without prejudice.  Should Plaintiff wish to replead his breach of contract claim, his Second Amended Complaint will be due on or before **September 29, 2021**.

The Clerk of Court is directed to terminate the motion at docket entry 20.

The Clerk of Court is further directed to mail a copy of this Opinion to Plaintiff

at his address of record.

SO ORDERED.

Dated:      September 1, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge